**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| **Willet Walter Thomas,** | : | |
| | : | Bky. No. 20-12232 (PMM) |
| Debtor. | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

In September 2019, secured creditor Petra Holdings, Inc. ("Petra") obtained a mortgage foreclosure judgment by default against the debtor, Willet Walter Thomas ("the Debtor").  In September 2020, shortly after the Debtor filed this bankruptcy case, the promissory note that was the basis for the foreclosure judgment matured.  Petra asserts a secured claim based upon the mortgage foreclosure judgment.

The Debtor filed an objection to Petra's proof of claim asserting that Petra failed to credit a pre-petition insurance payment that the Debtor assigned to Petra prior to the foreclosure.  Petra maintains that the objection must be overruled because the Debtor may not relitigate the foreclosure judgment by way of the claims allowance process.  The Debtor counters that he is not relitigating the in rem state court foreclosure judgment, but only seeks to revisit the amount owed on the in personam promissory note between him and Petra.

The outcome of this dispute turns on whether the objection runs afoul of the doctrine of res judicata, i.e., would a determination of the proper balance of the mortgage account by this court amount to an impermissible reopening of the foreclosure judgment?

For reasons discussed below, I find that:

- The promissory note matured during the pendency of the chapter 13 plan;

- The Debtor may not cure the arrears and maintain payments with respect to Petra's claim; and

- The Debtor is unable to invoke §1322(b)(5) to revive the note and mortgage.

Therefore, the Debtor's objection is barred by principles of res judicata. Accordingly, I will overrule the Debtor's objection.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. The State Court Proceeding

On August 31, 2005, the Debtor executed a promissory note in the principal amount of $90,000.00 ("the Note") in favor of Apex Mortgage which was secured by a mortgage (the "Mortgage") on the Debtor's residence at 219 E. 9th Street, Northampton, Pennsylvania (the "Property"). See Proof of Claim, Exhibits 3 & 5. The Note and Mortgage were subsequently assigned to Petra on April 1, 2016. See Id., Exhibits 3-5.

The Note provides that "Borrower will pay this loan in 180 payments of $1,051.37 each payment. Borrower's first payment is due October 10, 2005 and . . . Borrower's final payment will be due on September 10, 2020, and will be for all principal and all accrued interest not yet paid." Id. Thus, per its terms, the Note matured on September 10, 2020. See Id. Exhibit 5 at 6.

On October 19, 2018, Petra initiated a foreclosure action in the Court of Common Pleas in Northampton County (the "State Court") at Case No. C-48-CV-2018-9887 (the "Foreclosure"). On September 20, 2019, the State Court entered judgment by default in favor of Petra and against the Debtor in the amount of $78,969.08 (the "Judgment"). The Judgment was

calculated as of August 19, 2019 and references a principal amount owed in the amount of $47,666.13.  See Proof of Claim at Exhibit 2.

On March 2, 2020,[1] Petra filed with the Prothonotary a Praecipe for Writ of Execution in the total amount of $82,749.31.  See Proof of Claim, Exhibit 2.

### B.  The Bankruptcy Case

On May 5, 2020, the Debtor filed a voluntary chapter 13 bankruptcy petition.  The Debtor's Schedule A discloses ownership of the Property, listing a value of $169,672.00.[2]  The Property is encumbered by municipal liens in the total amount of approximately $15,900.00, as well as, Petra's secured claim in the amount of $82,749.31.  See Schedule D.  The Debtor acknowledged the State Court Foreclosure on his Statement of Financial Affairs ("SOFA").[3]

According to the Debtor's Schedule I, he is currently unemployed and receives unemployment compensation and social security.  His gross monthly income is $2,851.40.  The Debtor's monthly expenses total $2,455.00, which includes a mortgage payment of $1,000.00.  See Schedule J.  The Debtor has proposed a Chapter 13 plan in which he will pay Petra $1,000.00 per month directly and the Chapter 13 Trustee will pay an unspecified amount to cure the pre-petition arrears.  The Debtor's proposed treatment under the plan is to cure and maintain payments.  See Plan §4(b).

---

[1]  The Praecipe is dated on its face February 21, 2020, but the date stamp affixed reads March 2, 2020.

[2]  This is the amount stated on the Debtor's Schedule A.  To the contrary, Petra asserts that the Property is worth $130,000.00.  See Proof of Claim No. 6.

[3]  Although the Debtor characterizes the Foreclosure as pending, see SOFA, the matter was concluded by the entry of a default judgment in favor of Petra on September 20, 2019.  Proof of Claim, Exhibit 2.  As of the Petition Date, the execution of the judgment remained pending.

3

On July 14, 2020, Petra filed Proof of Claim No. 6, a secured claim in the amount of $87,000.49, based upon the State Court Judgment. The amount is broken down as follows:

- Principal balance: $47,666.13
- Interest due: $24,860.00
- Prepetition fees: $14,474.36

The Debtor filed his Objection to the Proof of Claim ("the Objection") on December 2, 2020. Doc. #20. The Objection asserts that Petra failed to credit the amount due under the Note for an insurance check in the amount of $13,396.42, which the Debtor signed over to the creditor on September 10, 2015. See Objection and exhibit thereto.

Following the January 7, 2021 hearing on the Objection, the parties each filed briefs in support of their positions. See doc. #'s 27 and 28. This matter is thus ripe for disposition.

### III. THE PARTIES' ARGUMENTS

During the January 7th hearing on the Objection, I raised the issue of whether as a preliminary matter, the doctrine of res judicata precludes consideration of the Debtor's Objection. The Debtor argues that even though there is a State Court Judgment, the doctrine of res judicata does not apply because the Foreclosure was an in rem proceeding and the Debtor seeks to reduce the amount owed on the Note, which is an in personam liability. The Debtor relies on Randall v. Bank One Nat'l Ass'n (In re Randall), 358 B.R. 145 (Bankr. E.D. Pa. 2006) to argue that due to the distinction between the mortgage judgment and the arrears owed pursuant to the Note, litigation of the Objection is not precluded.[4]

---

[4] The Debtor raises in his Brief, for the first time, the doctrine of collateral estoppel, also known as issue preclusion. However, the Debtor fails to provide an analysis regarding why this preclusion doctrine is relevant. Because I find, infra, that res judicata applies to bar the relief sought, I will not engage in a separate analysis of
Fn cont'd

4

Petra contends that all the elements for the application of res judicata are present and either res judicata and/or the Rooker-Feldman doctrine succeed in preventing relitigation of the Judgment. According to Petra, the Debtor lost in State Court by failing to dispute the amount owed and then did not appeal the outcome. Petra relies on the Third Circuit Court of Appeals case Knapper v. Bankers Tr. Co. (In re Knapper), 407 F.3d 573 (3d Cir. 2005).

## IV.  LEGAL STANDARDS

### A.  Determining an Objection to a Proof of Claim

The standard for resolving a claim objection is well known and will be summarized briefly.

Pursuant to 11 U.S.C §502(a), a proof of claim properly filed is deemed allowed unless a party in interest objects. If a party in interest objects, the court must determine the proper amount of the allowable claim. 11 U.S.C. §502(b)(1). A proof of claim filed in accordance with the rules is prima facie "evidence of the validity and amount of the claim." Rule 3001(f).

The Third Circuit has summarized the shifting burden employed in determining a contested proof of claim:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim ... [T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (internal citations omitted).

---

collateral estoppel. See Khalil v. Cole, 2020 PA Super 242, 240 A.3d 996, 1001–02 (2020) (res judicata subsumes collateral estoppel).

In the Eastern District, this standard has been elucidated as follows: "if a proof of claim complies with the Rules of Court and is self-sustaining (*i.e.,* it sets forth the facts necessary to state a claim and is not self-contradictory), it is prima facie valid and the objecting party has the burden of producing evidence to refute the claim." In re Sacko, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008). See also In re Ditech Holding Corp., et al., 2021 WL 219529, at *5 (Bankr. S.D.N.Y. Jan. 20, 2021).

Here, there is no dispute that Petra's Proof of Claim is at least prima facie valid. The burden thus shifts to the Debtor to provide evidence sufficient to refute that validity.

### B. The Doctrine of Res Judicata

The doctrine of res judicata seeks to avoid the burden of relitigation of a matter already judicially determined and provides that "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (citation omitted); In re Donaghy, 2020 WL 2759251, at *2 (E.D. Pa. May 28, 2020); see also Garman v. Angino, 2020 PA Super 75, 230 A.3d 1246, 1252 (2020). Thus, "[f]ederal courts must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" Allegheny Ludlum Steel Corp., 40 F.3d at 1429 (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889 (1982)).

Under Pennsylvania law,[5] a determination that res judicata applies requires a proponent to establish four (4) elements: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006); Moore, 436 B.R. at 759 (citing Yamulla Trucking & Excavating Company, Inc. v. Justofin, 2001 PA Super 72, 771 A.2d 782, 784 (Pa. Super. 2001)).

Res judicata applies to judgments entered by default. In re Sheed, 607 B.R. 470, 484 (Bankr. E.D. Pa. 2019) ("The rule in Pennsylvania is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation.").

## V. ANALYSIS

**A. Following a Foreclosure Judgment, a Debtor May Either Cure a Mortgage in Bankruptcy or Satisfy the Judgment with a Full Payment**

　　i. the merger doctrine

As a preface to the discussion on the merits to the Objection, a short overview of Pennsylvania mortgage law is in order.

The doctrine of merger is well known in Pennsylvania. Once a foreclosure judgment has been entered, as here, the mortgage effectively no longer exists and is subsumed by the state court foreclosure judgment.

> Under controlling Pennsylvania law . . . [the] judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new

---

[5] In determining the applicability of res judicata, federal courts "look principally to state law in deciding what effect to give state court judgments." Turner, 449 F.3d at 548 (quoting Lance v. Dennis, 546 U.S. 459, 466, 126 S. Ct. 1198, 1202 (2006)). Because the Judgment was rendered in the Pennsylvania Court of Common Pleas, Pennsylvania preclusion law applies. Moore v. Coldwell Banker Mortg. (In re Moore), 436 B.R. 754, 759 (Bankr. E.D. Pa. 2010).

obligation . . . The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties.

Stendardo v. Fed. Nat'l Mortg. Ass'n, 991 F.2d 1089, 1094-95 (3d Cir. 1993), as amended (June 21, 1993).

The merger of the loan documents into a foreclosure judgment means that the terms of the mortgage and note are no longer relevant to a determination of a debtor's liability. "Generally, the right to collect any pre-judgment amounts which could have been included in the judgment, and the right to collect any post-judgment charges provided for by the note and mortgage are extinguished." In re Cohen-Harvin, 571 B.R. 672, 675 (Bankr. E.D. Pa. 2017) (citing Stendardo and holding that a bankruptcy court may determine post judgment charges on proof of claim). Because the mortgage is extinguished post foreclosure, ordinarily no monthly payments are due on the note. Wilmington Tr., Nat'l Ass'n v. Unknown Heirs, 2019 PA Super 286, 219 A.3d 1173, 1180 (2019) ("The debt secured by the mortgage is accelerated and is immediately due and payable in its entirety as set forth in the judgment.").

### ii. debtor's options in bankruptcy post foreclosure judgment

The Bankruptcy Code provides a debtor with two (2) options with regard to how a judgment may be treated: a chapter 13 debtor may either pay the full amount of the judgment over the life of the chapter 13 plan or he or she may satisfy the pre-petition default (and maintain the reinstated mortgage, see discussion, infra):

> the Code permits a chapter 13 debtor to propose a plan that utilizes one or the other of these two options . . . with a real estate secured claim: **either pay the present value of the secured claim in full during the life of the plan or cure the default and maintain payments during the life of the plan** . . . [a] Debtor must decide whether it is feasible, and in his best interests, to modify the secured mortgage claims and pay the present value of the claims in full through the plan, or to cure the defaults through his plan and reinstate

8

the original mortgage contracts.

In re Hussain, 250 B.R. 502, 507 (Bankr. D.N.J. 2000) (holding that debtor cannot cure and modify a mortgage simultaneously) (citing 1 Keith M. Lundin, Chapter 13 Bankruptcy §4.47, at 4-65 (2d ed. 1994)) (internal quotations omitted; emphasis added).

The first option, paying the present value of the secured claim during the plan, requires a debtor to fully satisfy the foreclosure judgment. In re Bernadin, 609 B.R. 26, 44 n. 20 (Bankr. E.D. Pa. 2019), opinion vacated in part on reconsideration, 610 B.R. 787 (Bankr. E.D. Pa. 2019); ("§1325(a)(5) requires that the allowed claim be paid in full over time"); In re Keokuk, 600 B.R. 593, 599 (Bankr. E.D. Ky. 2019) (same, and noting that the debtor may surrender the collateral under §1325(a)(5)(C)); In re Bullard, 475 B.R. 304, 308 (Bankr. D. Mass. 2012), aff'd, 494 B.R. 92 (B.A.P. 1st Cir. 2013) (same); In re Rorie, 98 B.R. 215, 218 (Bankr. E.D. Pa. 1989) ("if the debtor proposes to pay the creditor's allowed secured claim in full, the judgment does affect the amount of that claim."); 8 Collier on Bankruptcy, ¶1325.06 (Richard Levin & Henry J. Sommer eds., 16th ed.) (plan may not modify claim to provide for less than full payment of judgment according to its terms).

The second post-foreclosure judgment option permitted by the Code – and the one proposed here by the Debtor – allows for a chapter 13 plan to "provide for the cur[e] of any default within a reasonable time [as well as the] maintenance of payments while the case is pending on any . . . secured claim. . . ." 11 U.S.C. §1322(b)(5) (emphasis added). Thus, instead of satisfying the current value of a secured creditor's claim, a debtor may choose to make up the arrears owed on the note and continue to pay the current amount due.

9

Document    Page 10 of 15

Curing mortgage arrears during a pending bankruptcy case has the further effect of remedying a default and nullifying its consequences. This procedure serves to revive the mortgage, which otherwise would be subsumed into the judgment:

> If the debtor proposes to cure the mortgage arrearage, she has decided to deaccelerate the mortgage default. Upon the successful completion of her plan, <u>her mortgage is reinstated as if there had been no prior default and the effect of the prepetition judgment is extinguished</u>. Any attempt to cure the prepetition mortgage arrearage requires that all missed prepetition payments be made along with late charges and other costs permitted to be assessed by the mortgage agreement; in essence, the debtor is choosing to repay the loan under the terms of the mortgage contract, including its interest rate.

Rorie, 98 B.R. at 218 (internal citations omitted; emphasis added). See also In re Lammy, 356 B.R. 168, 172 (Bankr. E.D. Pa. 2006) ("Curing a default commonly means taking care of the triggering event and returning to pre-default conditions." (quoting In re Taddeo, 685 F.2d 24, 26-27 (2d Cir. 1982))).

To be clear, because curing a mortgage has the effect of reversing the consequences of the default, a debtor may employ the cure and maintain option provided for in §1322(b)(5) *even when a mortgage debt that has been accelerated by a foreclosure action*. According to Colliers:

> The courts of appeals have uniformly held that a debtor's plan may provide for curing a default notwithstanding a prepetition acceleration of the debt. These courts rejected the argument that because the debt had been accelerated, or had been merged into a judgment, it no longer was a claim upon which the last payment was due after the due date for the final plan payment.

8 Collier, at ¶1322.09[6].[6] See also In re Glenn, 760 F.2d 1428 (6th Cir. 1985).

---

[6] The Third Circuit's decision in In re Roach, 824 F.2d 1370 (3d Cir. 1987), holding that a debtor's right to cure ended with a foreclosure judgment, was an outlier among prevailing law on this subject. Congress overruled Roach by implementation of 11 U.S.C. §1322(c)(1), which specifically allows for a cure of mortgage default to take place until "such residence is sold at a foreclosure sale . . . ." See In re Connors, 497 F.3d 314, 322 (3d Cir. 2007) (noting abrogation); In re Goione, 595 B.R. 477, 487 (Bankr. D.N.J. 2019) ("[a]s a result of Congressional action in 1994, under § 1322(c)(1), notwithstanding a foreclosure judgment, a debtor can cure and reinstate the mortgage subject").

While a debtor may cure mortgage arrears through a chapter 13 plan and thereby reinstate a previously accelerated mortgage, the claim to be cured must mature *after* the last plan payment is due. The language of section 1322(b)(5) sets this out, stating that a plan may

> [p]rovide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim **on which the last payment is due after the date on which the final payment under the plan is due . . . .**

11 U.S.C. §1322(b)(5) (emphasis added).

This Code section thus

> permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances, and may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan. . . .**The debtor may not cure a default under this section if the debt matures earlier than the due date for the final plan payment**.

Collier, at ¶1322.09[1-2] (emphasis added); In re Klein, 106 B.R. 396, 403 (Bankr. E.D. Pa. 1989) (holding debtor could not cure under §1322(b)(5) because last payment obligation was due before final plan payment).

### B. The Debtor's Attempt to Alter the Judgment via the Claim Objection is Barred by Res Judicata

#### i. the Debtor cannot cure the mortgage arrears; he must pay the Judgment in full

When applied to the facts of this case, the law outlined above dictates that the Debtor cannot, as his current (filed, but yet unconfirmed) plan proposes, cure and maintain the Mortgage. The Debtor filed for bankruptcy protection on May 5, 2020. The final payment on the Mortgage and Note was due approximately four (4) months later, on September 10, 2020. That date has passed. Thus, the option to deaccelerate and reinstate a mortgage provided for in §1322(b)(5) is not a choice for the Debtor.

11

The Debtor must, therefore, pay the entire Foreclosure Judgment through his plan. In Re Nepil, 206 B.R. 72, 77 (Bankr. D.N.J. 1997) ("A confirmable Chapter 13 plan must . . . pay judgment holders their claim over the life of the plan."). This fact is fatal to Debtor's attempt to challenge the amount of arrears owed (as well as for confirmation of his plan).

### ii. res judicata precludes relitigation of the Judgment amount

As a preliminary matter to this portion of the discussion, I credit the Debtor's assertion that a Pennsylvania action in mortgage foreclosure is an in rem proceeding which seeks the limited determination of whether a default warrants subjecting the mortgaged property to judicial sale. In re Marchese, 605 B.R. 676, 692 (Bankr. E.D. Pa. 2019); In re Randall, 358 B.R. 145 (Bankr. E.D. Pa. 2006); Polao v. Deutsche Bank Nat'l Tr. Co., 242 A.3d 411 (Pa. Super. Ct. 2020). Further, a debtor may challenge the amount owed on the mortgage note, which is an in personam action, despite the entrance of a foreclosure judgment. Bache-Wiig v. Fournier (In re Bache-Wiig), 299 B.R. 245, 249 (Bankr. D. Me. 2003); In re Branam, 476 B.R. 333, 337 (Bankr. S.D. Fla. 2012).

However, and critically, the relief sought by the Debtor is not merely that he be discharged from his personal liability on the Note, but also that the Judgment lien be deemed satisfied upon completion of the Plan. Unlike the typical chapter 13 case in which a debtor seeks to cure and maintain a long-term debt by deaccelerating the balance and returning the account to its pre-default status upon completion of the plan, here the Debtor must pay the secured claim in full over the life of the plan. In this context, the Debtor's completion of the plan payments would effectively satisfy the judgment and lien rather than return the account to a pre-default status. Generally, when a debtor utilizes §1322(b)(5) to cure and maintain a mortgage account,

12

the creditor's lien remains on the Property and is unaffected by the completion of the plan and subsequent discharge.[7] However, allowance of recalculation of the Debtor's Note deficiency, as sought by way of the Objection to the Proof of Claim, would essentially determine that the Debtor did not owe the Judgment amount entered by the State Court. In other words, the Judgment amount would be supplanted by a determination of the claim objection allowing the Debtor to payoff the lien in the plan. Such a determination is prohibited by res judicata.

To flesh out the distinction between the preclusive effect of a state court judgment with regard to a cure and maintain plan versus a plan that must pay the mortgage judgment amount in full, a case from this court is instructive. In In re Galloway, 220 B.R. 236 (Bankr. E.D. Pa. 1998), the Debtor objected to her mortgage company's proof of claim asserting, inter alia, that the mortgage arrears were improperly calculated. As here, the mortgage company in Galloway received a pre-petition foreclosure judgment by default. The secured creditor asserted that res judicata barred relitigation of the state court's determination of arrears, fees, and costs. The debtor's confirmed plan provided that "upon full payment of the arrears the [d]ebtor's mortgage [would] be reinstated as if there had never been a default." 220 B.R. at 240.

In Galloway, Judge Sigmund held that res judicata did not bar relitigation of mortgage arrears because the matter was "not the thing sued upon in the foreclosure action. . . ." 220 B.R. at 241-242 (internal quotations omitted). Because the debtor proposed a cure plan rather than a full payment plan, the foreclosure judgment did not amount to reconsideration of the amounts to be applied.

According to Judge Sigmund:

---

[7] A long-term debt treated pursuant to §1322(b)(5) is "excepted from any discharge granted under section 1328, and the creditor's lien remains intact." Collier, at ¶1322.09[1].

13

> Although the entry of the foreclosure judgment is binding on the [d]ebtor for the purpose of ruling on [the mortgagee's] entire claim, it is not binding with respect to the determination of the amount necessary to cure a default. … [W]hen a debtor proposes to cure a default he is choosing to deaccelerate the mortgage and repay the missed payments and other charges due thereunder as if the mortgage was still in effect [sic]. Thus, these amounts have to be determined by reference to the mortgage regardless of the fact that it was deemed to have merged into the creditor's foreclosure judgment. If the cure is successful, the mortgage will be reinstated as if there had never been a default.
>
> **If this proceeding required a determination of the amount necessary to satisfy the entire mortgage debt over the life of the plan, the amount established by the judgment would be the starting point from which all subsequent calculations would be made.** However, that amount is not at issue in this proceeding which instead is focused upon a determination of the [d]ebtor's arrears.

Id. at 242 (internal citations omitted). That is, "[u]nless and until a cure is effected, the judgment remains a valid ruling on [the mortgagee's] right to foreclose and constitutes a final and binding determination of the full amount owed by the [d]ebtor to pay off the mortgage." Id. at 243; see also Bernadin, 609 B.R. at 37-38 (discussing that foreclosure judgment must be entered for sum certain and that res judicata prohibits relitigation of liability of this sum); Wilmington Trust, 219 A.3d at 1181 (holding that res judicata barred relitigation of mortgage foreclosure).

Because the Debtor cannot invoke §1322(b)(5) to cure and maintain payments on Petra's claim, res judicata bars relitigation of the amount owed. I find that the four (4) elements necessary to satisfy a res judicata analysis are present here: the Foreclosure Judgment is based upon the Note and Mortgage; it involves the same parties (the Debtor and Petra) in their same capacities, and the current controversy involves the same cause of action – how much must be paid in order to satisfy the mortgage lien.[8]

---

[8] Petra, which argues that res judicata precludes the relief sought by the Debtor, see Brief at 1, confuses the issue by asserting that the Rooker- Feldman doctrine applies.
  The Rooker- Feldman doctrine divests a bankruptcy court of jurisdiction to hear a matter. National Med. Imaging, LLC v. U.S. Bank, N.A. (In re National Med. Imaging, LLC), 2021 WL 810865, *8 (Bankr. E.D. Pa. Feb. 22, 2021). However, Rooker-Feldman is not applicable to a claim objection based on pre-petition facts, and therefore does not apply here. See In re Razzi, 533 B.R. 469, 478-79
Fn cont'd

The preclusion of reexamination of the Judgment means that determination of the Debtor's "ultimate" issue of whether the insurance proceeds must be credited will not be examined. Hearing at 1:29:41. The Debtor had the opportunity to raise that issue in the State Court prior to the issuance of the Judgment.

## VI.  CONCLUSION

Because the Note terminated during the term of the Debtor's plan, the Debtor may not provide for Petra's claim by curing the arrears and maintaining payments on the Note and Mortgage. Therefore, the relief sought in the Objection amounts to a post-petition challenge to a valid and binding pre-petition Foreclosure Judgment. The Debtor did not raise the issue of Petra's failure to credit the Debtor's account for the insurance check prior to the issuance of the Judgment. <u>Res judicata</u> bars him from raising it now.

The Objection will be overruled. An appropriate order will be entered.

**Date: March  23, 2021**

PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE

---

(Bankr. E.D. Pa. 2015) ("when a debtor objects to a proof of claim (supported by a pre-petition state court judgment), arguing that the claim should be disallowed based on facts that occurred prior to the entry of judgment and defenses that were, or could have been raised, in the state court litigation, such matters are governed by *res judicata*, not Rooker–Feldman"). <u>See</u> also <u>In re Donaghy</u>, 2019 WL 1504334, at *5, n.10 (Bankr. E.D. Pa. Apr. 4, 2019).

15